# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# CENTRAL DIVISION

|  |  |
|---|---|
| In re: | Chapter 7 |
|  | Case No. 09-21832-HJB |
| AVNER ARAZI, |  |
| Debtor. |  |

## MEMORANDUM OF DECISION

Before the Court are the "Trustee's Final Report and Account" (the "TFR"); an "Application Pursuant to 11 U.S.C. § 330 for Award of Final Compensation and Reimbursement of Expenses of the Law Firm Looney & Grossman, Counsel to the Chapter 7 Trustee" ("L&G"; the "L&G Fee Application"); and an "Application Pursuant to 11 U.S.C. § 326 for Award of Final Compensation of the Chapter 7 Trustee" (the "Trustee's Fee Application") (together, the "Fee Applications"), filed by Stewart F. Grossman, the Chapter 7 trustee (the "Trustee") in the Chapter 7 bankruptcy case of Avner Arazi (the "Debtor"). Now raised to this Court's attention, in the manner described below, is L&G's representation of unrelated parties in two state court actions against the Debtor at a time partially coterminous with the Trustee's administration of the bankruptcy estate. The Court must decide whether that representation violated § 327(a) of the Bankruptcy Code[1] and/or whether it should have been disclosed, pursuant to

---

[1] All references to the "Bankruptcy Code" or to Code sections are to the United States Bankruptcy Code unless otherwise specified, see 11 U.S.C. §§ 101 et seq.; all

1

Rule 2014 or MLBR 2014-1.  And if any violation or failure to disclose is true, the Court must determine what should be the impact, if any, on allowance of the Fee Applications.

I.    FACTS AND POSITIONS OF THE PARTIES

The relevant facts are generally not in dispute.  On December 7, 2009, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  On May 11, 2010, upon motion of the United States Trustee, the Court converted the Debtor's case to one under Chapter 7.  Attorney Joseph Braunstein was originally appointed Chapter 7 trustee, but ultimately rejected the appointment.  On June 15, 2010, the present Trustee was appointed in his place.

On June 16, 2010, the Trustee filed a motion to employ himself and his law firm, L&G, to assist him in the administration of the Debtor's estate (the "Motion to Employ").  See ECF No. 90.  The Motion to Employ was accompanied by an affidavit of the Trustee on behalf of L&G in accordance with Rule 2014(a) and MLBR 2014-1 (the "Affidavit").  See Id.

On the date of case commencement, the Debtor owned 11 single-unit residential properties in the Boston area from which he received rental income (the "Rental Properties").  Each of the Rental Properties was listed on the Debtor's Schedule A – Real Property.  On May 25, 2010, the Debtor filed a "Statement of Intention," expressing his intent to abandon, *inter alia*, each of the Rental Properties.  And on August 18, 2010, the Trustee filed a "Notice of

---

references to "Rule" are to the Federal Rules of Bankruptcy Procedure; all references to "MLBR" are to the Massachusetts Local Bankruptcy Rules.

Abandonment" stating his intention to abandon the estate's right, title and interest in 10 of the 11 Rental Properties. Included among the properties proposed for abandonment was 883 Harrison Avenue, #3, Boston, Massachusetts ("883 Harrison"). On September 8, 2010, after no objections had been filed, the Court entered an order approving the Notice of Abandonment.[2]

Sometime in early 2012, Patrick Houle and Brent Zeigler, condominium owners in 883 Harrison, retained L&G to bring suit against the Debtor, seeking a determination of who were the trustees of the 883 Harrison Avenue Condominium Trust.[3] That action was filed in the Massachusetts Suffolk County Superior Court in April 2012 (the "Superior Court Action"). On or about April 25, 2012, the Superior Court entered a judgment finding that Houle, Zeigler and the Debtor were all three trustees of the 883 Harrison Avenue Condominium Trust, among others. Later that August, L&G, on behalf of Houle and Zeigler, made a demand upon the Debtor for payment of a special assessment relating to 883 Harrison in the amount of $30,560.93 (the "Special Assessment"). On or about December 7, 2012, after the Debtor failed to pay the Special Assessment, L&G,

---

[2] Rule 6007(a) provides that a hearing is required only if an objection is filed to a trustee's notice of abandonment. Less clear is whether Court approval is necessary absent the filing of an objection. Nevertheless, this Court frequently issues orders approving abandonment even where no objection is filed, or sets hearings, *sua sponte*, where the reason for abandonment is unclear to the Court. This procedure serves a dual purpose: Chapter 7 trustees tend to appreciate the comfort of a final order approving the abandonment and this Court appreciates the opportunity to inquire where the reasoning of the trustee is not clear from the papers.

[3] Neither Houle nor Zeigler are listed anywhere in the Debtor's schedules as holding a claim against the Debtor or an interest in any property of the Debtor's bankruptcy estate.

3

on behalf of Houle & Zeigler, brought a second action against the Debtor in the Suffolk County Superior Court.

The Trustee filed the TFR and the Fee Applications on November 20, 2012. In the TFR, the Trustee states, *inter alia*, that he realized gross receipts of $25,008.10 less certain administrative expenses, leaving a balance on hand of $24,782.65 for distribution. See ECF. No. 179. From that balance, the Trustee sought compensation for his services in the amount of $3,250.81 – the maximum amount permitted to a Chapter 7 trustee pursuant to § 326(a), based on his projected disbursements. See Trustee's Fee Application ECF No. 181. L&G also sought from that balance compensation in the amount of $11,070.50 and reimbursement of expenses in the amount of $240.44, for a total amount of $11,310.94. See the L&G Fee Application ECF No. 180. On November 29, 2012, the Clerk's office entered a "Notice of Trustee's Final Report and Application for Compensation and Deadline to Object." A hearing on the TFR was set for January 22, 2013.

On December 26, 2012, Anthony Strauss, an alleged creditor[4] of the Debtor, filed an Objection to the TFR on the grounds that L&G's representation of Houle and Zeigler in the Superior Court Actions created a conflict of interest for both the Trustee and L&G, which conflict was never disclosed to the Court. Strauss's Objection also called into question whether L&G's fee request was partly based on work related to the Superior Court Actions.

---

[4] On the Debtor's Schedule D – Creditors Holding Secured Claims, Strauss is listed as holding a claim of $200,000, secured by 3 of the rental units, as well as an unsecured claim in the amount of $200,000.

The Trustee responded to Strauss's Objection with a Motion to Strike, maintaining that Strauss had no standing to object to the TFR or the Fee Applications because he had not filed a proof of claim in the Debtor's bankruptcy case. The Trustee also filed a Reply denying that any conflict existed for him or for his firm, L&G, in the administration of the Debtor's estate.[5] The Trustee contended that, at the time the Motion to Employ (including the Affidavit) was presented to and approved by this Court, there existed no conflict of interest or any connection or relationship adverse to the Debtor because L&G was not at that time representing Houle and Zeigler in the Superior Court Actions.

The Trustee additionally argued that in April 2012 when L&G commenced the first Superior Court Action, the Debtor's interest in 883 Harrison had already been abandoned by the Trustee pursuant to the Court's Order of September 8, 2010, and was no longer property of the Debtor's estate. Furthermore, the Trustee contended that the claims brought by Houle and Zeigler against the Debtor arose after the commencement of the case and, therefore, Houle and Zeigler were not creditors of the Debtor as defined by § 101(10) of the Bankruptcy Code. Finally, L&G offered to reduce the amount sought in compensation from $11,070.50 to $8,000 in order to put to rest the arguments made by Strauss relative to alleged overcharging and in view of the size of the estate.

---

[5] On January 16, 2013, Strauss filed a Response to the Trustee's Reply and Motion to Strike, reiterating his belief that L&G's representation of Houle and Zeigler in the Superior Court Actions created a conflict of interest for L&G and reasserting his standing as a creditor.

On January 22, 2013, the Court held a hearing on the TFR, the Objection thereto and the Fee Applications. The Court first entered an Order granting the Trustee's Motion to Strike on the grounds that Strauss did not have standing to object to the TFR because he did not timely file a proof of claim in the Debtor's bankruptcy case. Nevertheless, the Court did acknowledge that the issues presented by Strauss were deserving of examination, and took the Fee Applications and the TFR under advisement for further consideration.[6]

II.  DISCUSSION

Section 327(a) of the Bankruptcy Code permits a trustee,

> with the court's approval, [to] employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an *interest adverse to the estate*, and that are *disinterested persons*, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a)(emphasis supplied). To employ a professional person under this section of the Code, two requirements must be met. First, the professional must not "hold or represent an interest adverse to the estate." Id. And second, that person must also be a "disinterested person[ ]." Id. While the Code provides no definition for what might constitute an "interest adverse to the estate," the First Circuit Court of Appeals has explained such an interest to mean

> the 'possess[ion] or assert[ion] [of] mutually exclusive claims to the same economic interest, thus creating either an actual or potential dispute between rival claimants as to which … of them the disputed right or title to the interest in question attaches under valid and

---

[6] "Once alerted to potential conflict of interest on part of appointed counsel, the bankruptcy court must raise the issue, *sua sponte*, in order to safeguard its institutional integrity." Rome v. Baunstein, 19 F.3d 54, 59 (1st Cir. 1994) (citing In re Anver Corp., 44 B.R. 615, 617 (Bankr. D. Mass. 1984)).

>applicable law; or (2) [the possession of] a predisposition or interest under circumstances that render such a bias in favor of or against one of the entities.'

Rome v. Braunstein, 19 F.3d 54, 58 n. 1 (1st Cir. 1994) (quoting In re Roberts, 46 B.R. 815, 826-27 (Bankr. D. Utah 1985)).

The Code does, however, define a "disinterested person" as one who "is not a creditor, an equity security holder, or an insider," nor is or was "within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor," and "does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." § 101(14). "These statutory requirements," the First Circuit has explained, "serve an important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." Rome v. Braunstein, 19 F.3d at 58.

To further obviate the potential for any ethical compromise in the administration of the debtor's bankruptcy estate, perceived or real, the Code requires the professional to make certain disclosures. Rule 2014 requires a professional person to include with his or her application for employment a verified statement "setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Rule 2014(a). While Rule 2014(a) does not require

7

the applicant to provide *ongoing* disclosures of any conflict or potential conflict of interest, its local counterpart, Massachusetts Local Bankruptcy Rule 2014-1, does.  The Local Rule provides six (6) representations and disclosures an applicant must make to the court:

**RULE 2014-1. APPLICATION TO EMPLOY PROFESSIONAL PERSONS**

(A) Application and Statement

An application of a debtor (other than a chapter 7 debtor), debtor-in-possession, estate representative, or committee to employ any professional person, including an attorney, accountant, appraiser, broker, auctioneer, consultant or agent, shall include all of the information required to be provided by Fed. R. Bankr. 2014(a).  In addition, in the statement accompanying the application, the person to be employed (hereinafter the "professional") shall make the following representations and disclosures under penalty of perjury in accordance with section (c):

(1) Neither I nor any member of my firm holds or represents any interest adverse to the estate of the above-named debtor.

(2) My and my firm's connections with the debtor, any creditor, or other party in interest, their respective accountants are as follows:
_____
_____
_____
I am and each member of my firm is a "disinterested person" as that term is defined in 11 U.S.C. § 101(14).

(3) I have not agreed to share with any person (except members of my firm) the compensation to be paid for the services rendered in this case, except as follows:
_____
_____

(4) I have received a retainer in this case in the amount of $_____, which sum, upon information and belief was generated by the debtor from:

8

> _____ .
>
> (5) *I shall amend this statement immediately upon my learning (A) any of the within representations are incorrect or (B) there is any change of circumstance relating thereto.*
>
> (6) I have reviewed the provisions of MLBR 2016-1.

M.L.B.R. 2014-1(A) (emphasis supplied). The bankruptcy courts in Massachusetts understand "'[t]he requirements of the [local] rule to transcend those of § 327(a), as they mandate disclosure of all connections with the named parties, rather than being limited to those which deal with disinterestedness'" and require that those disclosures be made on a continuing basis. In re Liebfried Aviation, Inc., 445 B.R. 30, 33 (Bankr. D. Mass. 2011) (quoting In re Filene's Basement Inc., 239 B.R. 850, 856 (Bankr. D. Mass. 1999)). The burden of such disclosures is upon the applicant, as "section[ ] 327(a) cannot achieve [its] purpose unless court-appointed counsel police themselves in the first instance." Rome, 19 F.3d at 59.

The Affidavit signed by the Trustee on behalf of L&G makes, *inter alia*, the following representations:

> …
>
> 3. Neither I nor any member of my firm holds or represents any interest adverse to the estate of the above-named debtor.
>
> 4. To the best of my knowledge, [L&G] does not have any "connections" (as that term is defined in MLBR 2014-1(b)(1)) with the debtor, any creditor, or other party in interest, their respective attorneys and accountants.
>
> 5. I am and each member of my firm is a "disinterested person" as that term is defined in § 101(14) of the Bankruptcy Code.

9

> …
>
> 8. I shall amend this statement immediately upon my learning (A) any of the within representations are incorrect or (B) there is any change of circumstance relating thereto.
>
> 9. I have reviewed the provisions of MLBR 2016-1.

Motion to Employ ECF No. 90.

While "the bankruptcy court is invested with ample power to deter inappropriate influences upon the undivided loyalty of court-appointed professionals *throughout their tenure*, the need for professional self-scrutiny and avoidance of conflicts of interest does not end upon appointment." Rome, F.3d at 57; see also M.L.B.R. 2014-1(A)(5). The Affidavit was signed on June 15, 2010 and presented to the Court the following day. But at no time between April 2012, when L&G represented Houle and Ziegler in the first Superior Court Action, and November 2012, when the Trustee filed the TFR and Fee Applications, or later in December when L&G filed a second Superior Court Action against the Debtor, did the Trustee or L&G take any steps to amend the Affidavit. Certainly, the Court was not first made aware of L&G's new connection with the Debtor by any disclosure of the Trustee or L&G.

This Court recognizes the First Circuit's admonition that "[s]ince section 327(a) is designed to limit even *appearances* of impropriety to the extent reasonably practicable, doubt as to whether a particular set of facts gives rise to a disqualifying conflict of interest normally should be resolved in favor of disqualification." Rome, 19 F.3d at 60 (emphasis supplied) (citing In re Freedom Solar Ctr., Inc., 776 F.2d 14, 17 (1st Cir. 1985)). Section 328(c) empowers

bankruptcy courts with the authority to impose a "penalty" for noncompliance with § 327(a):

> [T]he court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 … of this title if, at any time during such professional person's employment under section 327 … of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c). Because the integrity of the Court's appointment of such professionals depends on the candidness of the applicant, "failure to disclose facts material to potential conflict may provide *totally independent* ground for denial of fees, quite apart from the actual representation of competing interests." Id. citing (In re Roger J. Au & Son, Inc., 71 B.R. 238, 242 (Bankr. N.D. Ohio 1986)); see also In re Everest Crossing, LLC, 2011 WL 4352119, *10 (Bankr. D. Mass. Sept. 16, 2011) ("Even where nondisclosure is not accompanied by a disqualifying conflict, it is not the case that nondisclosure is harmless.").

The Trustee swore under the penalty of perjury that he would, *inter alia*, "amend [the Affidavit] immediately upon [his] learning that (A) any of the within representations are incorrect or (B) there is any change of circumstance relating thereto." A change of circumstance as it related to L&G's connection to the Debtor occurred as early as April 2012. Regardless of whether L&G's representation of Houle and Zeigler posed an actual and disqualifying conflict of interest for L&G or the Trustee,[7] the failure to make *any* disclosure of that

---

[7] After serious reflection and with the benefit of hindsight, the Court concludes that the actions of L&G in representing Houle and Ziegler, in this case and limited to its facts, did not constitute the representation of a materially adverse interest to the estate or a lack of

11

representation prevented the Court from making its *own* analysis as to whether the representation of Houle and Ziegler constituted an interest materially adverse to the estate or a lack of disinterestedness. Accordingly, that failure constituted a violation of Local Rule 2014-1.

III.    CONCLUSION

For the foregoing reasons, the Court finds and rules that the Trustee and his firm, L&G failed to disclose a connection with the Debtor which ought to have been disclosed pursuant to MLBR 2014-1. Accordingly, the Court will accept L&G's offer to reduce its request for compensation to the sum of $8,000 in order to resolve the alleged overcharging claim and in light of the size of the estate, and will reduce the compensation awarded by an additional $1,000 on account of L&G's failure to timely amend the Affidavit.[8] Finding no basis for any other reduction of the Fee Applications or amendment of the TFR, the Trustee will be ordered to amend the TFR in accordance with this decision within 30 days. Orders in conformity with this Memorandum shall issue forthwith.

DATED: April 9, 2013

_____
Henry J. Boroff
United States Bankruptcy Judge

---

disinterestedness. Nevertheless, in an abundance of caution, the Court may very well have reached a different conclusion if presented with the disclosure when the representation of Houle and Ziegler was first undertaken. And that is the point.

[8] Of course had the Court found that the Trustee and L&G had indeed acquired a materially adverse interest to the estate or had lost its disinterestedness in the estate administration, all compensation would have been forfeit.